UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MARCELLINA M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

NO.  C17-5982-JPD

ORDER AFFIRMING THE
COMMISSIONER

     Plaintiff appeals the final decision of the Commissioner of the Social Security

Administration ("Commissioner") which denied her applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court ORDERS that the

Commissioner's decision be AFFIRMED.

ORDER - 1

# I.    FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-seven year old woman with a high school education plus some college.  Administrative Record ("AR") at 51, 53.[1] Her past work experience includes employment growing crystals for a solar company, as a wafer technician, and a Pendleton blanket operator.  AR at 54-56, 70.  Plaintiff was last gainfully employed in October 2012.  AR at 99.

In December 2013, plaintiff filed applications for SSI payments and DIB, alleging an onset date of May 5, 2008.  AR at 27, 90.  Plaintiff asserts that she is disabled due to status post-cervical fusion, fibromyalgia, depression, diabetes with neuropathy, migraines, degenerative disc disease of the lumbar spine, status post right Achilles repair, status post left shoulder surgery, and obesity.  AR at 29.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 27. Plaintiff requested a hearing, which took place on February 24, 2016.  AR at 47-75.  On April 7, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 24-40.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 30, 2017, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 4.

# II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] Plaintiff testified that she was currently a sophomore at Washington State University studying digital technologies and culture and taking 13 credits.  AR at 53.  She previously studied industrial radiography at trade school.  AR at 54.

III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

IV.    EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On April 7, 2016, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2.    The claimant has not engaged in substantial gainful activity since May 5, 2008, the alleged onset date.

3.    The claimant has the following severe impairments: status post cervical fusion, fibromyalgia, depression, diabetes with neuropathy, migraine, degenerative disc disease (DDD) of lumbar spine, status

post right Achilles repair, status post left shoulder surgery, and obesity (based on 66 inches, 300 pounds)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), i.e., lift/carry ten pounds occasionally and less than ten pounds frequently, except she can sit for about 6 hours, stand and walk about 2 hours in an 8-hour workday; can frequently climb ramps and stairs but never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; should avoid concentrated exposure to heat, cold, fumes, odors, dusts and other pulmonary irritants, as well as hazards such as moving machinery and unprotected heights; can occasionally reach overhead with the left upper extremity and frequently handle and finger with both upper extremities; can do simple, routine work; and can alternate between sitting and standing about every hour with change of position about 5 minutes while sustaining productivity.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1969 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.[3]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 5, 2008, through the date of this decision.

AR at 29-40.

_____

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

# VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ err in evaluating plaintiff's testimony?

2.     Did the ALJ err in evaluating the medical opinion evidence?

3.     Did the ALJ err in assessing plaintiff's RFC, or at step five?

Dkt. 14 at 1; Dkt. 18 at 2.

# VII.     DISCUSSION

A.     The ALJ Did Not Err in Evaluating Plaintiff's Testimony

*1.     Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

---

[4] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

> 2. *The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AR at 35.  Specifically, the ALJ found that plaintiff's statements regarding her symptoms were inconsistent with (1) the objective medical evidence of record, (2) plaintiff's conservative treatment history, (3) plaintiff's activities of daily living, and (4) plaintiff's work history.  AR at 38-39.

> (i) *Objective Medical Evidence*

An ALJ may consider the medical evidence as a relevant factor in determining the

---

indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  However, this change is effective March 28, 2016 and not applicable to the August 29, 2014 ALJ decision in this case.  The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

reliability of a claimant's symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Minimal objective findings can undermine a claimant's credibility. *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005). The ALJ did not err by citing the lack of objective medical evidence, among several other reasons, for discounting plaintiff's testimony about the limitations caused by her physical impairments. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Specifically, the ALJ found that plaintiff's statements regarding her symptoms were inconsistent with the evidence of record. AR at 32-38. Although the ALJ's analysis of the objective evidence in relation to plaintiff's specific claims was not a model of clarity, the Court could reasonably infer from the ALJ's detailed discussion what claims the ALJ found unreliable. Moreover, the ALJ's discussion of the objective evidence was just one of several reasons the ALJ gave for discounting plaintiff's testimony in this case. *Compare Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (where the ALJ only discussed the objective medical evidence to support his finding the claimant was not credible).

The ALJ noted that plaintiff was injured while working in March 2008. AR at 32, 411. She had a C5-6 anterior cervical discectomy and fusion in August 2008. AR at 32, 572-573. Records demonstrated that her neck was doing "generally well" one year later. AR at 32, 462. Although she still had some intermittent neck pain, there were no radicular symptoms, and x-rays showed good bony fusion. AR at 32. Only regular exercise and proper posture, as well as vocational rehabilitation, were recommended as treatment. AR at 32, 462.

The ALJ further noted that Stephen Paul Engard, PAC, completed a physical assessment in February 2011. AR at 36, 508-518. He opined plaintiff was limited to light work based on her cervical pain, left shoulder pain, multiple peripheral pain, and morbid obesity. He rated the severity of these impairments as only mild, except for her shoulder, which he rated as

mild to moderate.   In addition, Peter Pfeiffer, M.D., conducted a physical consultative examination in March 2011, which indicated some limitations from impairments but not to the degree that would prevent all work. AR at 34, 526-529. Dr. Pfeiffer noted plaintiff was well groomed and able to sit without distress, dress, and get on and off the examination table. The neck had some decreased range of motion but all other joints were normal. Fine and gross manipulation was normal. Gait and station were normal. She was neurologically intact and reported that her typical day consisted of checking email, having coffee and breakfast, going to school four days per week (a total of about 22 hours per week), doing homework, performing light housework, grocery shopping, and handling personal care. AR at 34, 526-529.

The ALJ noted that treatment notes in July 2010 reflected that plaintiff's back pain was gone and Savella was "really helping" her neck. AR at 33, 480-481.  In July 2014, plaintiff's treating physician, Navin Nagaraj, M.D., indicated that he did not think she was disabled and instructed her to focus on her class work and "advance her ability to work in the real world." AR at 35, 632.  In March 2015, she reported that her neck pain was "well controlled" with Tramadol.  AR at 33, 866. In April 2015, plaintiff reported that her Cymbalta was helping her neuropathy and fibromyalgia and stated the medication was "doing a great job." AR at 33, 860. The ALJ noted that although the record also indicated some back pain complaints, a computed tomography (CT) scan of the lumbar spine in April 2015 showed only minimal DDD without stenosis.  AR at 33, 898. Treatment notes in July and September 2015 reflected that plaintiff's gait, strength and muscle tone were normal.  AR at 34, 831, 845.  Plaintiff seemed to have had good results from the cervical surgery with only minor residual limitations.  AR at 33.  In fact, in June 2010, Daniel A. Brzuske, D.O., found plaintiff had no permanent cervical impairment. AR at 33, 382. No nerve or sensory deficits were noted in July 2015. AR at 33.

Finally, with respect to plaintiff's shoulder impairment, the ALJ noted that in June 2009, plaintiff had left shoulder arthroscopy and decompression. AR at 33, 459. Records reflected plaintiff progressed with physical therapy, and returned to work about three months after the surgery. AR at 33, 459-460. In March 2010, Jerome DaSilva, M.D., saw plaintiff for an orthopedic re-evaluation of her left shoulder. AR at 33, 468. She was "happy" but still had some discomfort in her shoulder. On examination, she had only a mild restriction of range of motion. Treatment notes in July 2010 reflected that the prescription Savella was "really helping" her shoulder. AR at 33, 480. Treatment notes in October 2012 showed no deformities or tenderness in upper and lower extremities bilaterally. AR at 33, 600. The ALJ noted plaintiff testified she was not taking any pain medication, and was able to drive, clean, and prepare meals. AR at 33, 52, 61, 67. A treatment's effectiveness is relevant in determining the severity of a claimant's symptoms. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

With respect to plaintiff's mental health, the ALJ found that there was no evidence that it would preclude fulltime employment. AR at 34. During a March 2011 consultative psychological examination with Scott Alvord, Psy.D., plaintiff appeared depressed but she denied suicidal ideation; psychomotor movements were within normal limits; thought processes were intact; speech was within normal limits; memory was intact; concentration was good; abstract thinking was intact; insight was intact; fund of knowledge was good; and intellectual functioning was determined to fall in the average range. AR at 34, 523-524. There was little to no change at the May 2014 psychological consultative examination with Tobias Ryan, Psy.D., which indicated plaintiff continued to have good mental functioning. AR at 34, 610-615. Treatment notes from the Vancouver Clinic and Adventist Health reflected normal mood and affect in August and October 2014, as well as at appointments in 2015. AR at 34,

637, 691, 845, 861, 868. Beth Fitterer, PhD, a state agency consultant, reviewed the records and found a severe mental impairment of "affective disorders." AR at 37, 94-95, 106-107. She opined plaintiff had moderate limitations in concentration, persistence, and pace, but should be able to maintain attention and concentration with normal breaks. In September 2014, John Robinson, Ph.D., another state agency consultant, affirmed Dr. Fitterer's opinion. AR at 37, 123-124.

Plaintiff started counseling in November 2015, at which time she was depressed and anxious. However, her mental status examination was normal. AR at 34, 682. She reported that her spirituality had been very helpful with her pain and she was attending college for computer information systems. She had only a few sessions but by December 2015, her mood was somewhat improved and affect was full. AR at 34, 672. Overall, her mental status was assessed as "unremarkable" and general observations were considered "normal." AR at 34, 620, 632, 662, 672. Plaintiff had also taken medication (e.g., Prozac), which she reported improved her mood, and had some limited counseling for depression that seemed to help. AR at 34, 652, 662, 688.

Thus, the ALJ discussed the objective medical evidence regarding plaintiff's physical impairments in detail, and concluded that the evidence was inconsistent with the degree of limitation alleged by the plaintiff. AR at 34. This was a clear and convincing reason, supported by substantial evidence, for giving her testimony less weight.

(ii)     *Conservative Treatment*

The ALJ also found that "other than the aforementioned surgeries, the remainder of the claimant's treatment was routine and conservative." AR at 33. The ALJ found that plaintiff's conservative treatment history undermined her subjective testimony. Specifically, although plaintiff testified that she had fibromyalgia and described feelings of stinging or burning pain

in her legs, she was not taking any pain medication and used natural remedies instead. AR at 33. Specifically, plaintiff testified that she was only taking vitamin shots and used natural supplements from a naturopath. AR at 33, 9919-21. Moreover, in July 2014, her physician, Navin Nagaraj, M.D., counseled her about stress reduction and relaxation techniques to reduce her pain. AR at 33, 632. The ALJ concluded this lack of medication usage indicated that plaintiff was not greatly bothered by this impairment. AR at 33. As noted above, the ALJ also found that a few sessions of counseling, coupled with Prozac, improved her mood and mental health symptoms. AR at 34, 620, 632, 652, 662, 672, 688.

Conservative treatment is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007). An ALJ may consider medical reports of improvement and minimal treatment in evaluating a claimant's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ reasonably relied upon plaintiff's conservative treatment, which includes avoiding pain medication and limited counseling, as a reason to give her testimony less weight. This was clear and convincing, and supported by substantial evidence.

(iii)     *Activities of Daily Living*

An ALJ may also discredit a plaintiff's subjective symptoms by identifying inconsistencies between her complaints and activities of daily living. *Burch*, 400 F.3d at 680-81; *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). An ALJ may consider a claimant's daily activities when evaluating credibility. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

1    Here, the ALJ cited numerous activities plaintiff was able to perform that the ALJ

2    found to be inconsistent with disability.  AR at 31-35, 37-38.  Indeed, plaintiff was highly

3    active, and this was a clear and convincing reason for the ALJ to give plaintiff's testimony

4    regarding her symptoms less weight.  For example, the ALJ noted plaintiff was able to

5    cook/prepare meals; wash dishes; walk all over her college campus; use a computer for job

6    research; clean; care for a pet; handle her own personal care without problems from mental

7    health or needing reminders; handle a savings account and use a checkbook; drive; shop in

8    stores; spend time with others; read; attend college classes and monthly religious meetings; do

9    homework; and do water aerobics.  AR at 31-35, 37-39, 263-270, 612, 805.

10                  *(iv)      Work History*

11          The ALJ pointed out that plaintiff testified that she had jobs since the alleged

12   onset date.  AR at 35.  Specifically, she worked at Wafertech in 2010 and at Pendleton as a

13   blanket operator in 2012, where she made $7916.05.  AR at 35, 55-57, 259, 297.  She

14   performed the job of blanket operator at the light level but quit this job once she had the

15   opportunity to go to Mt. Hood Community College, where she had a cumulative GPA of 2.75

16   after the 2014 winter term.  AR at 35, 343-344.  The ALJ also noted that plaintiff was now

17   attending Washington State University in Vancouver and taking four classes, which amounts to

18   13 credits and is usually considered fulltime.  AR at 35.  Plaintiff testified that she is currently

19   attending university about 6 hours per day, four days per week.  AR at 35, 357-359.

20          Although these activities discussed above do not necessarily indicate plaintiff's ability

21   to perform work activities, the ALJ could reasonably conclude that they are inconsistent with

22   her alleged level of impairment.  Plaintiff's work history and ability to maintain a full college

23   courseload was a clear and convincing reason for the ALJ to give her testimony less weight.

24   *See Thomas*, 278 F.3d at 958-959; *Morgan*, 169 F.3d at 599-600.

Accordingly, the ALJ concluded that "the evidence of activities of daily living, work activity after the alleged onset date, quit last job to go to school (not due to a disability), attending college, getting only naturopath treatment, taking no pain medications, and intermittent Prozac and counseling does not equate to total disability. These were clear and convincing reasons, supported by substantial evidence, for the ALJ to afford plaintiff's testimony regarding the severity of her symptoms less weight.

B. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

1. *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.    *Dr. Alvord*

In a brief and conclusory fashion, plaintiff argues the ALJ improperly rejected the opinion of Dr. Alvord regarding his opinion that her adaptive functioning was mildly to moderately impaired. Dkt. 14 at 6. Plaintiff asserts that "Dr. Alvord's findings that [plaintiff] had a depressed mood and her affect was downtrodden/slightly tearful support his opinion about [her] limitations." AR at 522.

In rejecting Dr. Alvord's opinion regarding his assessment of adaptive functioning, the ALJ noted it was inconsistent with the mental status examination which indicated only mild symptoms. AR at 38, 522-523. For example, plaintiff did very well on cognitive/intellectual

testing, and she was not taking any medications for her symptoms. AR at 522-524. Dr. Alvord

also found only mild impairments in abilities to manage household chores, follow instructions,

concentrate, persist, and pace. AR at 37-38, 522. Moreover, the ALJ also noted the records

demonstrated plaintiff was working and going to school after the alleged onset date, which the

ALJ logically concluded was indicative of an ability to work even without psychiatric

treatment. AR at 38. An ALJ may reject a medical opinion that is brief, conclusory, and

inadequately supported by clinical findings, or contradicted by a claimant's daily activities.

*Thomas*, 278 F.3d at 957. Accordingly, plaintiff has not shown any error by the ALJ in

assessing Dr. Alvord's opinion.

### 3. Dr. Pfeiffer

Plaintiff also asserts in a conclusory fashion that the ALJ improperly rejected the

opinion of Dr. Pfeiffer that she could only reach occasionally with the left arm. Dkt. 14 at 6.

Specifically, plaintiff asserts that Dr. Pfeiffer found that plaintiff had limited range of motion

in her neck and left shoulder as well as tenderness in her quadriceps and upper torso. AR at

528. Dr. Pfeiffer opined that plaintiff could only occasionally reach with the left arm, AR at

529, and diagnosed plaintiff with fibromyalgia, left shoulder pain, neck pain, and morbid

obesity. AR at 528. Plaintiff asserts that although "the ALJ states he is giving 'little weight' to

Dr. Pfeiffer's opinion . . . [his] findings confirm that [she] has a medical condition that can

cause pain." AR at 36.

As noted above, the ALJ discussed the medical evidence of record in detail, including

Dr. Pfeiffer's opinion. AR at 35-36. In rejecting Dr. Pfeiffer's limitation of only occasional

reaching with the left arm, the ALJ specifically noted that this was inconsistent with plaintiff's

own testimony which stated she was only limited to above the shoulder reaching with her left

arm. AR at 36. Moreover, the ALJ noted it was also inconsistent with the longitudinal record,

which was reasonable given that Jerome DaSilva, M.D., the left shoulder surgeon, limited plaintiff to no overhead reaching prior to the performed surgery. AR at 36, 478. As noted above, an ALJ may reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings, or contradicted by a claimant's daily activities. *Thomas*, 278 F.3d at 957. The ALJ adopted many aspects of Dr. Pfeiffer's opinion which the ALJ found to be "consistent with the medical evidence," but merely found that "her ability to reach with her left arm is only limited above the shoulder according to even the claimant's testimony." AR at 36. Accordingly, plaintiff has not shown any error by the ALJ in evaluating Dr. Pfeiffer opinion.

### 4. Dr. Ryan

Plaintiff also argues that the ALJ improperly rejected the opinion of Tobias A. Ryan, Psy.D., that her ability to maintain a daily/weekly work schedule was moderately impaired due to chronic pain from her fibromyalgia. Dkt. 14 at 8 (citing AR at 615). The ALJ stated that he was giving Dr. Ryan's opinion "great weight," "except for the moderate impairment in maintaining a schedule, as the claimant was going to school, getting good grades . . . and attending water aerobics class three days per week." AR at 37. However, plaintiff argues that "Dr. Ryan's opinion is consistent with [plaintiff's] testimony about how her fibromyalgia affects her ability to maintain a schedule." Dkt. 14 at 8.

The ALJ discussed Dr. Ryan's psychological consultative examination in May 2014. AR at 37, 610-615. He noted that plaintiff's mood was depressed but there was no evidence of thought disturbance and stream of mental activity appeared to be within normal limits. Moreover, concentration, memory, fund of knowledge, and abstract thinking were all within normal limits. She completed activities of daily living independently, with normal persistence, but with a slower pace. Her reported level of social participation appeared to be mildly

impaired, but she appeared to have the ability to maintain meaningful relationships and participate in community activities. Dr. Ryan noted plaintiff had a distorted perception of her personal activity level, as she indicated severe difficulty, but she being active in her faith community and exercising regularly. AR at 37, 610-615.

The ALJ specifically noted that he gave the opinion great weight except for the opinion regarding a moderate impairment in maintaining a schedule. AR at 37. He rejected this part of Dr. Ryan's opinion because it was inconsistent with plaintiff's extensive daily activities, which included her ability to go to school, get good grades, and attend water aerobics classes three days per week. AR at 31-35, 37-39, 263-270, 612, 805.

As noted above, an ALJ may reject a medical opinion that is contradicted by a claimant's daily activities. *Thomas*, 278 F.3d at 957. Accordingly, the ALJ did not err in his assessment of Dr. Ryan's opinion, as plaintiff's daily activities evince a greater ability to maintain a consistent schedule than opined by Dr. Ryan.

### 5. David Morgan, M.D.

David Morgan, M.D. conducted a psychological evaluation of plaintiff in September 2015, and assessed numerous marked limitations in her ability to perform activities within a schedule, maintain regular attendance, be punctual, adapt to changes in routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, compete a normal workday/week without interruptions from symptoms, and set realistic goals. AR at 664-671. The ALJ gave Dr. Morgan's opinion "little weight" because "it is out of proportion with the rest of the medical evidence of record, and there was no indication from treatment notes that the claimant's behavior was inappropriate, the claimant's activities of daily living were generally indicative of high functioning, and the claimant's affect was normal per Dr. Morgan." AR at 38. In fact, the ALJ noted that plaintiff's behavior was specifically

assessed as normal at multiple appointments. The ALJ opined that "even if her mental health was as severe as determined by Dr. Morgan, it was only temporary and she engage in some counseling after this evaluation." AR at 38. The ALJ pointed out that counseling records reflected "unremarkable" mental status and "generally normal" behavior. AR at 38.

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Morgan regarding his assessed marked mental limitations in most functional areas due to her depression. Dkt. 14 at 11-12. Specifically, plaintiff contends that although the ALJ stated he was giving Dr. Morgan's opinion "little weight" because it is "out of proportion with the rest of the medical evidence of record," plaintiff asserts Dr. Morgan was able to base his opinion on independent clinical findings. Dkt. 14 at 12. In addition, plaintiff asserts that Dr. Morgan's opinions are consistent with the opinions of Dr. Alvord, Dr. Ryan, and Dr. Rutherford. *Id.* Finally, plaintiff argues that Dr. Morgan is a psychologist who was basing his opinion on his clinical findings, and that the ALJ erred by finding that even if plaintiff was as limited as Dr. Morgan found, "this was only temporary." AR at 38. Plaintiff argues "more accurately, this evidence confirms that [her] symptoms wax and wane." Dkt. 14 at 13.

Plaintiff has not shown any error by the ALJ in assessing Dr. Morgan's opinion, as the ALJ noted that there was no indication from the treatment notes that plaintiff's behavior was ever inappropriate and her activities of daily living were indicative of high functioning individual. AR at 31-35, 37-39, 263-270, 612, 805. Moreover, the ALJ also correctly noted that Dr. Morgan's opinion was inconsistent with his own finding that plaintiff's affect was normal. AR at 38, 667. An ALJ may reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings, or contradicted by a claimant's daily activities. *Thomas*, 278 F.3d at 957. Here, the ALJ found that Dr. Morgan's opinion was contradicted by

his own findings, as well as the counseling records and plaintiff's daily activities. Accordingly, the ALJ did not err in his assessment of Dr. Morgan's opinion.

### 6. *Drs. Hale, Fitterer, and Robinson*

Finally, plaintiff disagrees with the ALJ's decision to give great weight to the opinions of the State agency reviewing physician, Drs. Hale, Fitterer, and Robinson, because they did not have an opportunity to review all of the records in his case. Dkt. 14 at 13. Specifically, plaintiff argues that because they did not review any evidence beyond September 2014, "their opinions are entitled to only limited weight." *Id.*

Although Drs. Hale, Fitterer, and Robinson did not review all of the records in this case, the ALJ had the opportunity to review the entire record, AR at 32, and determined that their opinions regarding plaintiff's RFC were consistent with the longitudinal record. AR at 35, 37. Although plaintiff may believe the ALJ should have afforded their opinions less weight, it is the role of the ALJ to resolve conflicts in the medical opinion evidence. Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's that will be upheld. *Burch*, 400 F.3d at 679. Accordingly, plaintiff has not shown that the ALJ erred in affording great eight to the opinions of Drs. Hale, Fitterer, and Robinson.

### C. The ALJ Did Not Err in Assessing Plaintiff's RFC, or at Step Five

Because the Court has affirmed the findings of the ALJ as to plaintiff's prior assignments of error, it must also conclude that there was no error in determining plaintiff's RFC or relying upon that RFC at step five. Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints which were rejected by the ALJ, establishing the additional limitations that she believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting these additional limitations from the RFC assessment. *See Carmickle*, 533 F.3d at 1164–65 (holding that an ALJ's RFC assessment need

not include impairments for which the medical records do not establish any work related impairments).

### VIII.   CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision be AFFIRMED.  The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

DATED this 25th day of February, 2019.


JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 22